CADWALADER (CROSBY v.). See Case No. 3,419.

CADWALADER (UNITED STATES v.). See Case No. 14,706.

CADWALLADER (STOTESBURY v.). See Case No. 13,49ъ.

CADY (CUNNINGHAM v.). See Case No. 3,480.

## Case No. 2,283.

### CADY v. IMPERIAL INS. CO.

### [4 Cliff. 203.] [1]

Circuit Court, D. Rhode Island. June Term, 1873.

INSURANCE—PROMISSORY AND AFFIRMATIVE WARRANTIES.

1. Warranties are of two kinds, affirmative and promissory, and they may arise from express words or by implication.

2. Affirmative warranties, whether express or implied, are representations, in the policy, of the existence of some fact or state of things, at the time of, or previous to, the making of the policy, and they are conditions precedent which, if untrue, the policy does not attach as the contract of the insurers.

3. Promissory warranties may be also either express or implied. They relate to the happening of some future event, or the performance of some future act. They may be conditions precedent or subsequent. This is ascertained from the language employed, the subject-matter, and the surrounding circumstances.

4. Even words of warranty are subject to construction, and will receive a liberal or strict one, to meet the justice of the case.

5. A warranty, in respect to an existing fact, is a condition precedent, and, if not true when reasonably construed, it avoids the policy.

6. The insured, however, is only held to a substantial compliance, because the condition cannot be extended by construction, so as to include what is not necessarily implied in its terms.

7. Promissory warranties must be substantially performed, but not, like warranties, exactly and literally complied with. If substantially true as to existing circumstances, and in the same way complied with, so far as they are executory, that is sufficient.

8. A policy of insurance on a mill contained the stipulations that the forcing-pump should be kept in good working order, that a sufficient supply of water-casks and buckets should be kept in each room. *Held*, these were not warranties, and that it was sufficient if they were substantially complied with, as by reasonable diligence in repairing the pump when out of order, and by keeping water-casks and buckets in places where they were easily accessible from the rooms.

[See Sayles v. Northwestern Ins. Co., Case No. 12,421.]

A policy, in the sum of $7,500, was, on March 1, 1871, granted by the corporation defendants to the plaintiff [Resolved W. Cady], contracting to indemnify him, for one year from that date, against loss or damage by fire on his cotton-factory building, and the stone and frame additions thereto, situated in North Providence, R. I., and known as the Grey Stone Mill, and on the machinery,

both fixed and movable, therein, including also the engine, boilers, and their appurtenances, and the tools, fixtures, shafting, belting, steam and water pipes, forcing-pumps, mill furniture, and all other personal property required for the use of the mill, except stock and mill supplies, as set forth in the policy described in the declaration. Special reference to those details is unnecessary, because the claim was for a total loss which occurred on December 1st of the same year in which the policy was issued. Due notice of the loss was given to the defendants, accompanied by the required statement in writing, showing the particulars and the extent of the damage, signed by the plaintiff or his agent, and verified by his oath. Having exhibited the necessary preliminary proofs, and payment being refused, the plaintiff brought an action of assumpsit to recover the amount of the loss, as insured in the policy. Service having been made, the defendants appeared and pleaded the general issue, and the parties thereupon filed a stipulation in writing, waiving a jury, and consenting that the issues of fact should be tried and determined by the court. 13 Stat. 501. Testimony was introduced by both parties, and the material facts found by the court are as follows: 1. That the fire occurred on the morning of Dec. 1, 1871, and that the damage sustained by the plaintiff was $7,150, all of which was covered by the terms of the policy. 2. That due notice of the loss was given to the defendants by the plaintiff, and that he also introduced evidence showing that he was the owner of the property consumed at the time of the loss; and that he also introduced other evidence, tending to show that he had complied with all the conditions prescribed in the terms of the policy, unless some one or more of the defences set up by the insurers ought to prevail as a valid answer to the action. By the terms of the policy it was agreed on the part of the assured, that a constant night watchman should be kept on the premises, and that the forcing-pump and hydrants should be kept in good working order; also, a good supply of water-casks and buckets in each room. With liberty to use kerosene oil for lighting, provided the lamps are filled by daylight. Running time limited to customary day and evening hours, and occasionally extra, to equalize work, not later than ten o'clock in the evening. Based upon that stipulation in the policy, the defendants set up the following defences, and attempted to maintain the following propositions:—1. That each and every clause of that stipulation was a warranty, and, as such, that it became a part of the contract, and that the plaintiff could not recover unless it was shown that those warranties had been strictly performed. 2. That those several warranties applied to the entire period covered by the policy, and that it was not sufficient to show a compliance at the date of the loss, if it appeared that there had been a failure

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

to comply with the same at any prior period covered by the policy. 3. That the evidence showed that the forcing-pump was out of order, from the inception of the policy to September 1st following, and that the warranty in that regard having been broken, the policy became void, because no reason was shown why it was not kept in good order during all that time. 4. That the warranty was broken, because the forcing-pump was not in good order at the time of the loss. 5. That the warranty in regard to the water-casks and buckets was broken in two particulars. 1. Because they were not kept in each room. 2. Because there never was the requisite supply, and also because the supply was deficient at the time of the fire.

In respect to every one of the clauses in that stipulation, the plaintiff submitted the following propositions: 1. That the several clauses of the stipulation in question were not conditions precedent to the right of the plaintiff to recover, nor were they warranties in the sense that the policy was avoided in case it appeared that a breach occurred in respect to any one or more of them, unless it also appeared that the breach did or might have contributed in some degree to the fire or loss. 2. That there was a wide difference between a representation, in a policy, that a certain fact existed at the date of the contract, and an agreement or covenant therein, that something shall be done by the assured to diminish the risk. He admitted that a representation in a policy that a certain fact existed, as that there was a forcing-pump in the building insured, was a warranty, and that the insured, if it was false, could not recover, as it constituted a condition precedent, and that the policy never attached if it was shown to have been false. Conceding all that, still he denied that a failure to perform an agreement or covenant in a policy that something should be done by the insured, in the future, as that the forcing-pump should be kept in good order, would have any such effect, as such an agreement or covenant, even if taken in its widest sense, was but a condition subsequent, or a promissory warranty which would not avoid the policy, if it appeared that the breach of it did not and could not have contributed in any degree to the accident or loss. 3. That the several clauses in that stipulation were merely agreements or covenants running with the policy, and not strictly warranties, operating as conditions precedent, as was supposed by the defendants. 4. That the clause stipulating that the forcing-pump and hydrants should be kept in good working order was satisfied by proof of the existence at all times in the building of a good forcing-pump and hydrants, and reasonable skill and care to keep the same in good working order. 5. That the clause stipulating that there should be a good supply of water-casks and buckets in each room was satisfied by such supply for each room so situated as to be accessible and convenient for use, whether actually located in the room itself or in an entry connected with the room, and leading out of the same into another. Equally contradictory views were entertained by the parties in respect to the matters of fact involved in those several propositions, the plaintiff insisting that he had complied with every one of the requirements, and the defendants denying that the forcing-pump was in good order at the date of the policy, or at any subsequent time before the fire; and they also denied that there ever was a sufficient supply of water-casks and buckets in each room, as required by the terms of the policy. Numerous witnesses were examined upon these topics, and there was much conflict in their statements.

S. Currey, A. Payne, and J. C. Pegram, for plaintiff.

C. S. Bradley, F. Chamberlain, and J. H. Stiness, for defendants.

Before CLIFFORD, Circuit Justice, and KNOWLES, District Judge.

CLIFFORD, Circuit Justice. Insurance against fire is a contract to indemnify the insured for loss or damage, occasioned by that agency, to such of the property of the insured as is described in the policy, during the period therein specified. Fland. Ins. 17; Ang. Ins. § 45. Policies of insurance, like all other written contracts, are to be construed by ascertaining the intention of the parties, and in collecting that intention, the words of the policy must be understood in their plain, ordinary and popular signification, unless, in view of the subject-matter, or the usage of trade, the words have acquired a different meaning, or unless the context clearly shows that they are employed in some special and peculiar sense. Carr v. Montefiore, 5 Best & S. 408; Robertson v. French, 4 East, 135; Shore v. Wilson, 9 Clark & F. 569.

(After a review of the facts given in the foregoing statement, the court stated its findings as follows:) 1. That the forcing-pump and hydrants were in the building insured at the date of the policy, and that they were, at that time, in good working order. 2. That shortly after that, it was discovered that the forcing-pump was out of order, and the agent and superintendent took it out and sent it to the manufacturers to have it repaired, supposing that all it needed was a new cap; and it appears that the manufacturers took off the old cap and made a new one, and sent the pump back, and it was put in place; but it would not work. Subsequent attempts were made by the agent and the same superintendent to discover what the difficulty was, but without success, though the attempts were repeated a number of times. On the 1st of June the superintendent left, and a new one was appointed in his place; and it appears that he, by

the direction of the agent, went immediately to work on the pump to see what it was that prevented it from operating; and the agent testifies that the new superintendent worked upon it without success, until he, the agent, got tired of having the men so employed, and towards the last of August he went and got the manufacturers to send a man to the mill for that purpose; and it appears that he came, and finally discovered that the defect consisted of a small hair-crack, so called, hardly discoverable by the eye, but which was sufficient to prevent the pump from working. He took out that section of the pipe, and cast a new one, or caused it to be done, and replaced the defective part with the new casting, and the pump was put in good working order in the first week in September. Satisfactory proof was also introduced by the plaintiff, showing that it was examined on the 1st of October following, and found to be in good working order, and again on the 1st of November of the same year, when it was also found to be in the same condition. Testimony was also introduced, showing that the forcing-pump was examined as late as the middle of November, and the superintendent testifies to the effect that it was in good order. Viewed in the light of the whole evidence, the court is of the opinion, and accordingly finds, that the forcing-pump was put in good working order during the first week in September; that it was examined the 1st of October and the 1st of November following, and again about the middle of November in the same year, and found to be in good working condition; and that the evidence furnishes no reason to doubt that it remained in the same condition until the night of the 30th of the last-named month, when it was rendered inoperative by freezing. 3. That there was a sufficient supply of water-casks and buckets for each room, situated either in the room itself, or in an entry connected with and opening into the room, and so located as to be convenient and accessible for use in each room of the building. 4. That there is no evidence showing any breach of the other clauses of the stipulation.

Assume the facts to be as found by the court, and it is clear that all of the propositions submitted by the defendants in respect to the forcing-pump, except two, may be overruled without further remark. They, the defendants, still insist that the policy is void for three reasons: 1. Because the forcing-pump was out of order from the middle of March to September 1st in the same year. 2. Because it was not in good working order at the time of the fire. 3. Because the water-casks and buckets were, in some instances, located in an entry connected with the room, and not in the room itself, as they insist the terms of the policy require. Completely repaired, as the forcing-pump was, during the first week of the preceding September, no one would contend, it is pre-

sumed, if it had continued without any defect, and had been in good working condition at the fire, that the prior omission to prevent it from getting out of order would operate as a forfeiture of the indemnity secured by the policy. Such a proposition, it would seem, is too unreasonable to receive a moment's countenance, and yet it must be adopted, or the first defence must fail, as the second defence, founded upon the fact that the forcing-pump would not operate at the time of the fire, is in every sense a distinct matter, the one having no connection whatever with the other, showing beyond controversy that each must stand or fall by itself, wholly without aid from the other, or in other words that the policy, if it was forfeited by the first omission, never afterwards became operative, and that if it was not forfeited by that omission, it continued to be operative throughout, unless it was forfeited by some new breach of the same stipulation, or some other wholly irrespective of the prior omission. Warranties are of two kinds, affirmative and promissory; and they may arise from express words, or they may be implied. Affirmative warranties, whether express or implied, are representations, in the policy, of the existence of some fact or state of things at the time, or previous to the time, of making the policy, and they are conditions precedent, which, if untrue, the policy does not attach as the contract of the insurer. New Castle Fire Ins. Co. v. MacMorran, 3 Dow, 262; Biccard v. Shepherd, 14 Moore, P. C. 475.

Promissory warranties may also be express or implied, and they have respect to the happening of some future event, or the performance of some future act, and they may be conditions precedent or conditions subsequent. Their character depends upon the intention of the parties, to be ascertained from the language employed, the subject-matter, and the surrounding circumstances. 1 Marsh. Ins. 346; 1 Arn. Ins. (2d Ed.) 580. Courts of justice, in some cases, and some text-writers have denied that there is any difference between an affirmative warranty and a promissory stipulation of the kind mentioned, and insists that the latter, as well as the former, must always be regarded as conditions precedent, on the literal truth or fulfilment of which the validity of the entire contract depends; but it is evident that the rule, if it be one, must have many exceptions, as otherwise the greatest injustice would be done to the insured, in view of the known fact that policies of insurance, of late years, are crowded with stipulations imposing almost innumerable conditions, covenants and agreements, wholly unknown to such instruments until within a recent period, and which, it is to be feared, attract very little attention from the owner of the property insured, until they are put forward subsequent to the loss, to show that the losing party is not entitled to the indemnity for

which the premium was paid. Borradaile v. Hunter, 5 Man. & G. 639; Alston v. Mechanics' Mut. Ins. Co., 4 Hill, 329; Ang. Ins. § 145. Even words of warranty are subject to construction, and will receive a strict or liberal construction, to meet the justice of the case, as where there was a warranty that a certain cotton mill was worked by day only, it was held that the warranty was not infringed, because it appeared that the engine and unconnected shafting was kept running all night, as the mill and machinery were not substantially worked. Mayall v. Mitford, 6 Adol. & E. 670; Shaw v. Robberds, Id. 75; Whitehead v. Price, 2 Comp., M. & R. 447; Buny. Ins. 65; 1 Phil. Ins. (4th Ed.) § 872.

Beyond doubt, a warranty in respect to an existing fact is a condition precedent, and if it be not true when reasonably construed, it avoids the policy, whether it is material or immaterial, as the condition is a part of the contract which cannot be enforced unless it appears that the condition is fulfilled; but the insured, even in such a case, is only held to a substantial compliance, it being well-settled law that the condition cannot be extended by construction, so as to include what is not necessarily implied in its terms. Turley v. North American Fire Ins. Co., 25 Wend. 374; Fland. Ins. 205. Somewhat different rules are to be applied to the executory stipulations in the policy, which are sometimes denominated promissory warranties, as such stipulations are rather to be regarded as having the legal effect of representations than of warranties, as understood in the law of marine insurance, though partaking in some measure of the character of both. They are like representations, in requiring that the facts shall be true and correct, and, so far as they are executory, that they shall be substantially performed, but not like warranties, in requiring an exact and literal compliance. It is enough, therefore, if these statements, relied on as the basis of the contract, are made in good faith, and without intent to deceive; that they are substantially true and correct, as to existing circumstances, and substantially complied with, so far as they are executory and regard the future. Houghton v. Manufacturers' Mut. Fire Ins. Co., 8 Metc. [Mass.] 120; 1 Pars. Mar. Ins. 423; Daniels v. Hudson R. Ins. Co., 12 Cush. 416; Hall v. People's Ins. Co., 6 Gray, 185; Columbian Ins. Co. v. Lawrence, 2 Pet. [27 U. S.] 25; Ang. Ins. § 153; Gilliat v. Pawtucket Mut. Fire Ins. Co., 8 R. I. 292. Substantially the same question was presented in the case of Aurora Fire Ins. Co. v. Eddy, 49 Ill. 106, heard and determined in the supreme court of Illinois. Insurance was granted to the plaintiff in that case. upon his flax factory, and the policy contained a stipulation "that the assured is to keep eight buckets, filled with water, on the first floor where the machinery is run, and four in the basement by

the reservoir, ready for use at all times in case of fire." Payment being refused, the insured sued the company, and the verdict was for the plaintiff. Exceptions were taken by the defendants to the instructions given to the jury, and the supreme court, among other things, decided that the stipulation was not a condition precedent, that it was an agreement in the nature of a promissory warranty, and that it was to be construed like other written agreements; that it did not bind the insured to a literal performance; that a substantial compliance was all that was required; that the jury should have been told that a literal compliance could not have been in the contemplation of the parties, as it might have been impossible, from freezing or other unavoidable causes; that such a construction would be unreasonable, as it would require what is impossible; but that it was incumbent on the insured to show that the required number of buckets were at the places designated in the agreement, ready for instant use in case of fire; and inasmuch as one of the instructions given was of a different character, the court set aside the verdict, and granted a new trial. Evidently the general views of the court in that case were the same as those expressed by the supreme court of Massachusetts in the cases previously referred to, and those cases appear to furnish the correct rule for the construction of the stipulation under consideration. Examined in view of those suggestions, and the authorities cited in their support, as the stipulation should be, the court is of the opinion that the first defence must be overruled.

Enough has already been remarked to show that the second defence cannot be sustained, as it is based upon the extreme rule that the stipulation in question is a condition precedent, and that nothing will excuse a strict performance of the same, which cannot be admitted, as it would render the policy void if the forcing-pump was rendered inoperative by lightning or flood, or even by the fire, which is the peril covered by the policy. Such a rule can never be adopted, as it would render the policy little better than a nullity. Sayles v. Northwestern Ins. Co. [Case No. 12,422]; Fland. Ins. 206; Peoria M. & F. Ins. Co. v. Lewis, 18 Ill. 553; Hide v. Bruce, 3 Doug. 213; Underhill v. Agawam Ins. Co., 6 Cush. 440. Sufficient is also remarked to show that the third defence must be overruled, as the first branch of it, which assumes that the supply of water-casks and buckets was deficient, is negatived by the finding of the court; and the second branch of it is plainly untenable. as it contravenes the proper rule of construction to be applied to the contract. Houghton v. Manufacturers' Mut. Fire Ins. Co., 8 Metc. [Mass.] 120; Jones Manuf'g Co. v. Manufacturers' Ins. Co., 8 Cush. 84; Aurora Fire Ins. Co. v. Eddy, 49 Ill. 106. Viewed in any light, the court is of the opinion that the plaintiff

is entitled to judgment. Damages and interest to be computed under the direction of the court.

Judgment for the plaintiff.