### KAHNWEILER et al. v. PHENIX INS. CO. OF BROOKLYN.

(Circuit Court of Appeals, Eighth Circuit. April 26, 1895.)

No. 388.

1. PLEADING—DEFENSES—CONDITION PRECEDENT.

A policy of fire insurance contained a condition that, upon the parties failing to agree upon the amount of damage, the same should be submitted to arbitrators, chosen as therein provided, and a further condition that no suit on the policy should be sustainable until after an award should have been obtained fixing the amount of damage. *Held* that, under the system of code pleading, permitting a general averment of performance of conditions precedent, the insurance company, in order to take advantage of nonperformance of this condition, must set up such nonperformance specially in its answer to a suit on the policy.

2. PRACTICE—FORM OF JUDGMENT ON DILATORY PLEA.

*Held*, further, that such defense would be a dilatory defense, upon which, if properly pleaded, judgment could only be entered that the action abate until after an award should have been obtained, and not finally in defendant's favor.

3. CONTRACTS—INTERPRETATION—INSURANCE POLICY.
  *Held*, further, that, under the terms of the condition, the insured was
  not more bound than the insurance company to demand an arbitration,
  after a disagreement as to the amount of damage; and, when neither
  party demanded an arbitration, such condition was to be deemed waived
  by both.

In Error to the Circuit Court of the United States for the District
of Kansas.

This was an action by A. B. Kahnweiler & Bro. against the Phenix
Insurance Company of Brooklyn on a policy of insurance. Judg-
ment was rendered in the circuit court for the defendant, and a
motion for a new trial was denied. 57 Fed. 562. Plaintiffs bring
error.

This suit was commenced in the circuit court of the United States for the
district of Kansas by the plaintiffs in error, A. B. Kahnweiler & Bro., against
the defendant in error, the Phenix Insurance Company of Brooklyn, to
recover the amount alleged to be due on a fire insurance policy. The policy
contained, among many others, the following conditions: "(10) The amount
of sound value and of damage to the property, whether real or personal,
covered by this policy, or any part thereof, may be determined by mutual
agreement between the company and the assured, or, failing to agree, the
same shall then be submitted to competent and impartial arbiters, one to
be selected by each party, the two so chosen, in case of disagreement, to
select an umpire to whom they shall refer each subject of difference, and
the award of any two of them, in writing, under oath, shall be binding and
conclusive as to the amount of such loss or damage, but shall not determine
the validity of the contract, nor the liability of this company, nor any other
question except only the amount of such loss or damage. Each party shall
pay their own arbitrator and one-half the cost of the umpire. It shall be
optional with the company to take the whole or any part of the articles
at their appraised value." "(12) It is furthermore hereby expressly pro-
vided and mutually agreed that no suit or action against this company,
for the recovery of any claim by virtue of this policy, shall be sustainable
in any court of law or chancery until after an award shall have been
obtained fixing the amount of such claim in the manner above provided,
which is agreed to be a condition precedent." After the goods were burned,
8 or 10 adjusters went to Lawrence, Kan., where the loss occurred, to adjust
the same. Differences arose between the adjusters and the insured as to
the amount of the loss, and this is what occurred at their final interview:
"After they had been through the books, they sent for my brother and
myself [the plaintiffs]. We went up there. Mr. Hamlin was spokesman for
the adjusters, and had papers in his hands, and said: 'Mr. Kahnweiler,
you have had $22,700 worth of goods. We have got to get away, and want
to settle.' And said: 'We have had dealings with your nationality before.'
He said this amount the companies were ready to pay, and he was ready
to pay the proportionate part of that amount due from the Phenix Com-
pany. I told him we had over $45,000 worth of loss, and would not accept
any such settlement. My brother and I took the books out of the room.
Hamlin followed me into another room, and said, 'We'll beat you before a
farmers' jury in your own courts.' That was the last that was said between
us." Thereafter suit was brought on the policy. The policy was annexed
to and made part of the plaintiffs' petition, which averred that the plaintiffs
had "performed all the conditions of the said policy on their part." The
defenses set up in the answer were—First, a general denial; and, second,
that the plaintiffs willfully burned the goods. After the plaintiffs' evidence
was introduced, and they had rested the case, the defendant demurred to
the evidence for this, among other reasons: "Because the evidence does
not show that before the commencement of this action there was any
arbitration and award as to the amount of damages, while it does appear
from the plaintiffs' evidence that there was a difference between the plain-

tiff and defendant as to the amount of the loss mentioned in the petition before the commencement of this action." The court sustained the demurrer to the evidence upon this ground, and rendered judgment "that the plaintiffs take nothing by their action, and that the said defendant go hence without day"; whereupon the plaintiffs sued out this writ of error.

Clifford Histed (W. H. Rossington, Charles Blood Smith, and E. J. Dallas, on the brief), for plaintiffs in error.

H. M. Jackson, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

At the threshold of this case we are confronted with some questions of pleading and practice. In pleading the performance of a condition precedent under the code system, it is not necessary, as it was at common law, to state the facts showing such performance, but it is sufficient to state generally "that the party duly performed all the conditions on his part; and, if such allegations be controverted, the party pleading must establish on the trial the facts showing such performance." Gen. St. Kan. 1889, § 4205. The policy in suit contains the usual conditions in such policies with reference to notice and proofs of loss, etc., and declares that "until such proofs, plans and specifications, declarations and certificates are produced by the claimant, and such examinations and arbitrations permitted and had, the loss shall not be payable." The plaintiffs' complaint made the policy in suit a part thereof, and contained the averment that the plaintiffs had "performed all the conditions of the said policy on their part." The only answer to this allegation of the complaint was a general denial. Assuming for the present that the obtaining of an award was a condition precedent to the right of the plaintiffs to maintain their action, did this general denial put in issue the allegation that the plaintiffs had complied with that condition of the policy? In other words, was the general allegation of due performance properly "controverted," within the meaning of the Kansas Code? We think it is clear that it was not. If the defendant intended to rely upon the nonperformance by the plaintiffs of one or more of the numerous conditions of the policy, it should have pointed them out specifically and alleged their breach. In no other way could it be known to the parties or the court what issues were to be tried. Under the Code, when a defendant relies upon a breach of a condition precedent in a contract as an excuse for not performing the contract on his part, he must set out specifically the condition and the breach, so that the plaintiff and the court will be advised of the issue to be tried. Bliss, Code Pl. (3d Ed.) § 356a; Nash. Pl. pp. 300-302, 782. In the case of Preston v. Roberts, 12 Bush, 570, 583, the court of appeals of Kentucky said:

"The plaintiff being expressly authorized to plead in that manner [general performance of conditions precedent], the defendant must, if he relies upon the fact that any of the conditions precedent has not been performed, specify the particulars in which the plaintiff has failed (Newm. Pl. & Prac. 510, 511; Railroad Co. v. Leavell, 16 B. Mon. 362), thus confining the issue

to be tried to such particular condition or conditions precedent as the defendant may indicate as unperformed."

See, to the same effect, Gridler v. Bank, 12 Bush, 333.

The cases of Hamilton v. Insurance Co., 136 U. S. 242, 10 Sup. Ct. 945, and Hamilton v. Insurance Co., 137 U. S. 370, 11 Sup. Ct. 133, arose in a code state, and in these cases the defendant set up the condition precedent relied upon as a defense, and specifically alleged its breach, and this is believed to be the uniform practice in all code states. It is also the practice in England under a statute which, like our codes, permits a general averment of the performance of conditions precedent by the plaintiff. Under that statute, where such a general averment is made in the declaration, any condition precedent, the performance or occurrence of which is to be contested, must be distinctly specified, and its performance negatived in the defendant's answer. For English cases illustrating the rule, see Glenn v. Leith, 22 Eng. Law & Eq. 489; Graves v. Legg, 25 Eng. Law & Eq. 552. In the case last cited Lord Chief Baron Pollock observes:

"The declaration having averred, according to the 57th section of the common-law procedure act, the performance of conditions precedent generally, the defendants proceeded in their plea to specify this condition of declaring the names of the vessels as one of the breaches of which they insist."

Moreover, if the plaintiffs failed to show compliance with the alleged condition precedent, their cause of action was not thereby barred or extinguished; at most, it could only operate to suspend the cause of action and abate the suit. Clark, Cont. 666, 667. In the language of the policy, it would simply operate to abate the suit "until after an award shall have been obtained." In other words, when properly pleaded, it is a dilatory defense, and not one going to the merits of the action. It does not impugn the right of action altogether, and is not, therefore, a peremptory plea. At common law dilatory pleas were waived by a pleading to the merits. Steph. Pl. 433. Under the Code system, matter in suspension or abatement of the action may, and, if intended to be relied upon as a defense, must, be set up in the answer. It is a defense, and under the Code all defenses, whether dilatory or peremptory, are set up in one answer in separate paragraphs. Ehrman v. Insurance Co., 1 McCrary, 123, 1 Fed. 471; Bliss, Code Pl. § 345. Where a dilatory defense is embraced in the answer, the court will direct the jury to determine that issue first, and, in case their finding on that issue is for the defendant, will see that the proper judgment is rendered thereon. Ehrman v. Insurance Co., supra; Bliss, Code Pl. § 345. By failing to set up the condition precedent and its breach in its answer, the defendant waived that defense. If the rule were otherwise, a degree of uncertainty would be introduced in the practice in this class of cases much greater even than that which obtained under the general issue at common law. It would be a snare and a pitfall, and neither the plaintiff nor the court would have any knowledge of the issue to be tried. No matter how many conditions precedent the contract contained, the plaintiff would be obliged to go to the expense

of preparing to prove performance or waiver of every one of them. An objection of this character cannot be held back, as was done in this case, until, at great expense, a trial has been gone through with, and the plaintiffs have closed their case upon the evidence, and then be brought forward for the first time by way of a demurrer to the evidence. Such a practice would be intolerable. In this connection it is proper to notice another error in the record. If this dilatory defense had been properly pleaded, and the issue had been rightfully found for the defendant, the judgment in the case would still be erroneous. Mr. Stephens (Steph. Pl. 107) says that, upon the determination of an issue "on a dilatory plea, the judgment is that the writ (or declaration) be quashed, upon such pleas as are in abatement of the writ or bill, and that the suit do stay or be respited until, etc., upon such pleas as are in suspension only,—the effect, in the first case, of course, being that the suit is defeated, but with liberty to the plaintiff to begin another in more correct form; in the second, that the suit is suspended until the objection be removed. If the issue arise upon a declaration or peremptory plea, the judgment is in general, that the plaintiff take nothing, etc., and that the defendant go thereof without day, etc., which is called a judgment of nil capiat." The court below rendered a judgment of nil capiat in this case, which would forever preclude the plaintiffs from obtaining an award or recovering on the policy in suit after they had obtained an award. The judgment should have been that the action abate "until after an award shall have been obtained fixing the amount of" the plaintiffs' claim as provided by the policy.

We think the court erred in its interpretation of the clause of the policy relating to arbitration. If the clause which declares that no action on the policy shall be sustainable "until after an award shall have been obtained" in the manner provided therein is to be taken literally, then all the insurance company has to do to escape liability altogether is to refuse to appoint an arbitrator, and thus make it impossible for the insured to comply with this condition. This shows these conditions of the policy are not to be taken literally. They are to be construed together, and must receive a reasonable interpretation. When it is once established that the meaning of any provision in a policy of insurance is ambiguous or capable of two meanings, then all doubt as to its proper construction vanishes. It must receive that interpretation most favorable to the insured.

"If a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured. This rule, recognized in all the authorities, is a just one, because these instruments are drawn by the company. National Bank v. Insurance Co., 95 U. S. 673, 678." Thompson v. Insurance Co., 136 U. S. 287–297, 10 Sup. Ct. 1019; 2 Whart. Cont. 670.

Another well-settled rule for the interpretation of all contracts is that the court will lean to that interpretation of a contract which will make it reasonable and just. Bish. Cont. § 400. Applying these rules to the tenth clause of this policy, its proper interpretation seems quite clear. When there is a difference between the company and the insured as to the amount of the loss the policy declares:

"The same shall then be submitted to competent and impartial arbitrators, one to be selected by each party   *   *   *." It will be observed that the obligation to procure or demand an arbitration is not, by this clause, in terms imposed on either party. It is not said that either the company or the insured shall take the initiative in setting the arbitration on foot. The company has no more right to say the insured must do it than the insured has to say the company must do it. The contract in this respect is neither unilateral nor self-executing. To procure a reference to arbitrators, the joint and concurrent action of both parties to the contract is indispensable. The right it gives and the obligation it creates to refer the differences between the parties to arbitrators are mutual. One party to the contract cannot bring about an arbitration. Each party is entitled to demand a reference, but neither can compel it, and neither has the right to insist that the other shall first demand it, and shall forfeit any right by not doing so. If the company demands it, and the insured refuses to arbitrate, his right of action is suspended until he consents to an arbitration; and if the insured demands an arbitration, and the company refuses to accede to the demand, the insured may maintain a suit on the policy, notwithstanding the language of the twelfth section of the policy, and, where neither party demands an arbitration, both parties thereby waive it.

Undoubtedly there is much implied in every writing, whether it be a statute or a contract. It is a maxim that "what is implied in a statute is as much a part of it as what is expressed." Wilson County v. Third Nat. Bank of Nashville, 103 U. S. 770; Gelpcke v. Dubuque, 1 Wall. 222. And this maxim is equally applicable to the interpretation of contracts. The interpretation contended for by the defendant in error would have the effect to import into the tenth clause of the policy, after the words "failing to agree," a clause to the effect that "the insured shall thereupon demand an arbitration"; and also to import into the twelfth clause, in order to give it validity, this qualifying clause: "Unless the insured has demanded an arbitration, and the company has refused to accede thereto." The rules for the interpretation of policies of insurance which we have adverted to preclude the court from importing any such clauses into this policy. The effect of doing so would be to construe the ambiguities and uncertainties of the policy in favor of the company and against the insured. We think it is necessarily implied in the tenth clause that, before either party can derive any advantage or benefit from this provision, he must indicate his readiness to be bound thereby, and demand compliance therewith by the other party. The clause is to be construed the same as if it read, "Upon the request of either party." These words or their equivalent are commonly found in similar clauses in policies of fire insurance, and they are necessarily and plainly implied in this policy. This is the interpretation placed upon a policy of the defendant in error identical with the one here in suit, by the supreme court of Montana. That court, construing the clause in the policy declaring that no suit thereon shall be sustainable until after an award, say this provision "will come into action to bar plaintiff's recovery where he has refused to arbitrate

after the matter for arbitration arose, and the same was seasonably sought in conformity with the terms of the policy, as was the case in Hamilton v. Insurance Co., 136 U. S. 242, 10 Sup. Ct. 945, and other cases cited in Randall v. Insurance Co., supra [25 Pac. 953]." Randall v. Insurance Co., 25 Pac. 960.

The conclusion reached is also in harmony with the adjudged cases on this subject arising on other policies. In Nurney v. Insurance Co., 63 Mich. 633, 30 N. W. 350, the policy provided that in case of differences as to the amount of damages the matter should, "at the written request of either party, be submitted to the judgment of two competent persons, to be mutually appointed by the assured and the company"; and the policy further provided that no suit should "be sustainable in any court of law or chancery until after an award shall have been obtained in the manner provided." The lower court instructed the jury "that the plaintiff could not maintain his suit until the amount of his loss had first been determined by arbitration, or he had given notice to the defendant of his desire to have the same so determined, and the defendant had refused or neglected to comply with the request." The supreme court held this instruction erroneous, and, construing this provision of the policy, the court said:

"Arbitration becomes imperative only after the written request for one has been made. The request as it stands in this policy is optional with either party, and, neither of them having availed themselves of the right to arbitrate, it must be deemed waived by both, and in such case was left to the mode of redress provided by the law."

In the case of Insurance Co. v. Badger, 53 Wis. 283, 10 N. W. 504, the policy provided that the differences should, "at the written request of either party, be submitted to impartial arbitrators," and that no action should be sustainable in any court until an award had been obtained. Construing this policy, the court said:

"The imperative part of the first clause is that 'the matter shall be submitted to impartial arbitrators, etc.,' conditional, however, upon the written request of one or both of the parties. It is therefore optional and voluntary, or the duty rests upon each party alike, to make such written request, and in this case both parties have neglected such duty alike, and neither party can complain of the neglect of the other. * * * That there never has been an award is the fault of the company as much as the insured, and therefore the company is estopped from taking advantage of the fact that there has not been an award."

In the case of Wright v. Insurance Co. (Pa. Sup.) 20 Atl. 716, the provisions of the policy were the same as those contained in the policy in suit in the case of Insurance Co. v. Badger, supra, and the court said:

"It was the right of either party to demand arbitration. It was the right of either party to waive it; and the defendant having made no such demand must be presumed to have waived it."

And to the same effect is Wallace v. Insurance Co., 4 McCrary, 123.

The case of Hamilton v. Insurance Co., 136 U. S. 242, 10 Sup. Ct. 945, cited and relied on by the defendant in error, is not in point. The supreme court rested its judgment in that case upon the fact "that the defendant had requested in writing, and the plaintiff had de-

clined, the appraisal provided for in the policy." There was in this case no such request by the insurance company, either oral or in writing, but, on the contrary, when the difference arose between the parties over the amount of the loss, instead of suggesting or demanding an arbitration, the defendant's agent, addressing the insured, declared to them, "We'll beat you before a farmers' jury in your own courts," thus plainly inviting a suit at law to settle their differences. The insured accepted the gage thus thrown down by the company, and it is now too late for it to recede from the conflict in the arena chosen by itself. The judgment of the circuit court is reversed, and the cause remanded, with directions to grant a new trial.