### KELLEY v. MUTUAL LIFE INS. CO. OF NEW YORK.

(Circuit Court, S. D. Iowa, C. D. August 25, 1896.)

1. LIFE INSURANCE—WARRANTY IN APPLICATION.

Where the application is, by the face of the policy, made a part of the contract, and the application declares that the policy is to be made "in accordance with the following statements," one of which is a certain

warranty, and that these statements are "offered as a consideration of the contract," which is to be accepted as issued "in conformity with this application," such warranty is a part of the policy.

**2. SAME.**

When the application is, by the express terms of the policy, made "a part of this contract," a breach of a warranty in the application invalidates the contract, unless some peculiarity in the warranty takes it out of the general rule.

**8. SAME—SUICIDE.**

A warranty that insured will not die by his own act, "whether sane or insane," is valid.

Action by Josephine R. Kelley against the Mutual Life Insurance Company of New York. On demurrer to answer.

Remley & Ney and McElroy & Northrup, for plaintiff.
Park & Odell, for defendant.

WOOLSON, District Judge. This action is based on two policies of life insurance upon the life of Edward S. Kelley. The earlier policy, dated May 24, 1893, is for $2,500, payable to plaintiff (who was the wife of the insured). The later policy, dated December 28, 1893, is for $5,000, payable to the insured, but was by him assigned to one R. P. Mulock. After death of insured, said assignee, Mulock, assigned said policy to plaintiff. The insured died February 21, 1895. The defense herein is self-destruction by the insured.

So far as relates to the matters now in dispute, the contract of insurance in each policy is the same. I quote so much as relates to the issue of law involved in the pending demurrer:

"In consideration of the application for this policy, which is hereby made a part of this contract, the defendant promises to pay * * *, upon acceptance of satisfactory proofs * * * of the death of said Edward S. Kelley, * * * upon the following condition, and subject to the provisions, requirements, and benefits stated on the back of this policy, which are hereby referred to and made part hereof." [Here follow provisions for payment of annual premium.]

In the "provisions, requirements, and benefits" exhibited (in petition) with each policy is found the following:

"Incontestability. It is further promised and agreed that, after two years from the date hereof, the only conditions which shall be binding upon the holder of this policy are that he shall pay the premiums, at the times and places and in the manner stipulated in said policy, and that the requirements of the company as to age and military or naval service in time of war shall be observed, and that in all other respects, if this policy matures after the expiration of the said two years, the payment of the sum insured by this policy shall not be disputed."

There is also exhibited with each policy what is headed "Medical Examiner's Report," consisting largely of questions and answers purporting to be signed by the insured, and also the following:

"I hereby apply to the Mutual Life Insurance Company of New York for a policy of * * * insurance on my life, * * * in accordance with the following statements: * * * I hereby warrant and agree not to reside or travel [here follow climatic, etc., limitations] * * * during the next two years following the date of the issue of the policy for which application is hereby made. * * * I also warrant and agree that I will not die by my own act, whether sane or insane, during the said period of two years. * * *

I also agree that all the foregoing statements and answers, as well as those I make to the company's examiner, in continuation of this application, are by me warranted to be true, and are offered to the company as a consideration of the contract, which I hereby agree to accept as issued by the company in conformity with this application. * * *

"[Signed]                                                    Edward S. Kelley."

Plaintiff's demurrer is aimed at the second and fifth paragraphs of the answer. These paragraphs are identical except that they apply to different policies. After alleging that said insured made written application to the company for insurance, and that, as consideration for such insurance, said insured offered "the representations, statements, and warranties" contained in such application (as set out with petition), and that said policies of insurance issued thereon and with reference thereto, etc., the defense is pleaded that, "in violation of said agreement and warranty," the same being exhibited as above copied, said insured "did, within two years next following the date of issue of said policy of insurance, die by his own act, sane or insane."

1. The first point of the demurrer, that "the warranty [not to die by his own act, sane or insane, within two years, etc.] is not made a part of the policy of insurance, and is not expressed in said policy, must be overruled. By the face of the policy, the application is made a part of the contract. and the application expressly declares it is made "in accordance with the following statements" (one of which is this warranty), and that these statements are "offered as a consideration of the contract" (which is to be accepted as issued "in conformity with this application").

2. The further point is presented that the contract of insurance "does not become void by its terms because of the breach of the said warranty."

Said Justice Clifford (Cady v. Insurance Co., 4 Cliff. 203, Fed. Cas. No. 2,283):

"Policies of insurance, like all other written contracts, are to be construed by ascertaining the intention of the parties; and, in collecting that intention, the words of the policy must be understood in their plain, ordinary, and popular signification, unless, in view of the subject-matter or the usage of trade, the words have acquired a different meaning, or unless the context clearly shows that they are employed in some special and peculiar sense."

To the same general effect is the declaration of the supreme court in Insurance Co. v. Boon, 95 U. S. 117, 128:

"Policies of insurance, like other contracts, must receive a reasonable interpretation, consonant with the apparent object and plain intent of the parties. * * * In construing contracts, words must have the sense in which the parties understood them. And, to understand them as the parties understood them, the nature of the contract, the objects to be attained, and all the circumstances must be considered."

In deciding the question before them, whose solution "depends upon the construction and effect to be given" to a portion of the application for the policy of insurance, the supreme court declare, in Insurance Co. v. Gridley, 100 U. S. 614, 615, that:

"It is a recognized rule in the construction of statutes that 'a thing which is within the intention of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not

within the statute unless it is within the intention of the makers.' This proposition is equally applicable to other written instruments. The object of all symbols is to convey the meaning of those who use them, and, when that can be ascertained, it is conclusive. The intent of the lawmakers is the law, and here the intent of the parties is the contract."

This announcement, it is true, related to a statement by the insured, in his application for the policy, with reference to an existing fact. In the case at bar the statement is with reference to a future event. But are not the two, or may they not be, governed in construction by the same general rule?

"By the terms of the policy, the insurance was predicated upon the application, which is expressly declared therein to be a part of the policy. * * * Accordingly, when the policy contains a clause declaring that the application forms a part of the contract, all the material statements in the answers of the applicant are thereby changed from representations into warranties. In such a case the application is to be taken as a part of the contract of insurance, in the same manner as it would be if incorporated into the policy itself." Eddy St. Iron Foundry v. Hampden Stock & Mut. Fire Ins. Co., 1 Cliff. 300, Fed. Cas. No. 4,277.

After noticing the general differences between representations and warranties as affecting the insurance contract, Justice Clifford adds:

"But, when the representations of the insured are expressly referred to in the policy as forming a part of the contract, they will acquire the character of warranties, and invalidate the insurance, unless strictly complied with, whether they are or are not material to the risk assumed by the insurer."

The phrase on which the defense relies in case at bar is expressly declared to be a warranty. "I warrant and agree" is the language of the application. Since, therefore, the application is, by the express terms of the policy, made "a part of this contract," it must follow that a breach of this warranty invalidates the contract, unless some peculiarity in the warranty itself shall take it out of the general rule.

The cases are not infrequent where a warranty with reference to a future event, or "a continuing warranty," has been considered by the courts. Especially in contracts with reference to fire insurance are these cases frequent,—as with reference to a force pump on the premises (Cady v. Insurance Co., 4 Cliff. 203, Fed. Cas. No. 2,283; Sayles v. Insurance Co., 2 Curt. 610, Fed. Cas. No. 12,422); lamps in factory (Clark v. Insurance Co., 8 How. 235); unoccupied condition of insured property (Albion Lead Works v. Williamsburg City Fire Ins. Co., 2 Fed. 479; Dennison v. Insurance Co., 52 Iowa, 457, 3 N. W. 500); change in title or possession (Runkle v. Insurance Co., 6 Fed. 143; Hathaway v. Insurance Co., 64 Iowa, 229, 20 N. W. 164; McKissick v. Insurance Co., 50 Iowa, 116); stopping mill (Day v. Insurance Co., 70 Iowa, 710, 29 N. W. 443); as to future incumbrances (Ellis v. Insurance Co., 61 Iowa, 577, 16 N. W. 744); change of exposure (Davis v. Insurance Co., 81 Iowa, 496, 46 N. W. 1073).

In James v. Insurance Co., 4 Cliff. 272, Fed. Cas. No. 7,182, Justice Clifford says:

"Warranties may be affirmative or promissory. Affirmative warranties may be express or implied, but they usually consist of positive representations in the policy of the existence of some fact or state of things at the time, or

previous to the time, of the making of the policy; and they are, in general, conditions precedent, which, if untrue, whether material to the risk or not, the policy does not attach, as it is not the contract of the insurer. Promissory warranties may also be express or implied; but they usually, not always, have respect to the happening of some future event, or the performance of some future act, in which case they are usually held to be conditions subsequent, and subject to a reasonable construction to effect the intentions of the parties, as evidenced by the language employed, the subject-matter, and the surrounding circumstances. Stipulations of this kind must receive a reasonable construction; and the rule is that the intention of the parties, if it can be ascertained, is to govern; 'and the intention,' says Shaw, C. J., 'is to be learned from the language used, construed in connection with every part and clause in the contract, the subject-matter respecting which the words are used, and the obvious purpose of each stipulation.' Houghton v. Insurance Co., 8 Metc. (Mass.) 125."

We must bear in mind, however, the rule, universally applied by the courts in all insurance matters, that any ambiguities in the application or other part of the policy are to be solved in favor of the validity of the insurance contract. Provisions therein which, upon one construction, make void, and upon another make valid, the contract, are never to be so construed as to render the contract void or nonenforceable, unless the opposite construction is, under the facts of the case, impracticable. Kahnweiler v. Insurance Co., 14 C. C. A. 485, 67 Fed. 483–487; Indemnity Co. v. Wood, 19 C. C. A. 264, 73 Fed. 81, 88; National Bank v. Insurance Co., 95 U. S. 673, 679; Thompson v. Insurance Co., 136 U. S. 287, 297, 10 Sup. Ct. 1019; Moulor v. Insurance Co., 111 U. S. 335, 342, 4 Sup. Ct. 466.

But there seems in the policy in suit no ambiguity with reference to the clause pleaded in defense. Its phraseology is clear, the meaning plain, and the intent of the parties manifest. What, then, is the character of performance to which the insured is to be held thereunder?

"A warranty as to an existing fact is a condition precedent, and if it be not true, when reasonably construed, it avoids the policy, whether it is material or immaterial, as the condition is a part of the contract, which cannot be enforced unless it appears that the condition is fulfilled; but the insured, even in such a case, is only held to a substantial compliance, it being well settled that the condition cannot be extended by construction so as to include what is not necessarily implied in its terms. Somewhat different rules are to be applied to the executory stipulations in the policy, which are sometimes denominated 'promissory warranties,' and such stipulations are to be regarded as having the legal effect of representations rather than warranties, as understood in the law of marine insurance, though partaking in some measure of the character of both. They are like representations, in requiring that the facts shall be true and correct, and, so far as they are executory, that they shall be literally performed, but not like warranties, in requiring an exact and literal compliance. It is enough, therefore, if these statements, relied on as the basis of the contract, are made in good faith, and without the intent to deceive; that they are substantially true and correct as to existing circumstances, and substantially complied with so far as they are executory and regard the future." Cady v. Insurance Co., 4 Cliff. 203, Fed. Cas. No. 2,283.

Under the foregoing statement of the law, as announced by Justice Clifford, the contention of counsel becomes immaterial as to whether the warranty above copied from the policies in suit are regarded as warranties strictly, or as executory stipulations, which, by the policies, are made a part of the insurance contract.

The circuit court of appeals for the second circuit, in Insurance Co. v. Leubrie, 18 C. C. A. 334, 71 Fed. 843, 845, when considering wheth-er "there is a legal distinction between the effect of such a condi-tion [that insured would not "die by his own hand during the period of two years following the issue of the policy"] when recited in the policy and when made the subject of a warranty in an application upon which the policy is founded," speaking through Circuit Judge Wallace, say:

"There is no such distinction. In either case there is a stipulation upon the literal fulfillment of which the validity of the contract depends; and in either the policy is to be void in the event of a breach,—a result which, by the con-dition, is expressly, and, by the warranty, is impliedly, assented to."

The history of litigation with reference to policies of life insur-ance containing conditions relating to self-destruction by insured need not here be attempted. A very full collection of the authori-ties on this point may be found in 16 C. C. A. 623, in note to In-surance Co. v. Florida. Since the decision of Bigelow v. Insurance Co. (1876) 93 U. S. 284, upheld the validity of policies whose con-tracts were nonenforceable where "suicide, sane or insane," was the cause of the death of the insured, the current of decision in this direction has been substantially unbroken, in state as well as fed-eral courts. The reasons for the conclusion reached are clearly stat-ed in the Bigelow Case. Referring to the former cases of Insurance Co. v. Terry, 15 Wall. 580, where the supreme court had held that the phrase "shall die by his own hand" did not apply to an insane man who took his own life, the court consider the phrase "shall die by suicide, sane or insane," as contained in the Bigelow policy, and declare (93 U. S. 286):

"But the insurers in this case have gone further, and sought to avoid alto-gether this class of risks. If they have succeeded in doing so, it is our duty to give effect to the contract, as neither the policy of the law nor sound mor-als forbid them to make it. * * * It is not perceived why they cannot limit their liability if the assured is in proper language told of the extent of the limitation; and it is not against public policy. * * * Nothing can be clearer than that the words 'sane or insane' were introduced for the purpose of ex-cepting from the operation of the policy any intended self-destruction, whether the insured was of sound mind or in a state of insanity. These words have a precise, definite, well-understood meaning. No one can be misled by them; nor could an expansion of this language more clearly express the intention of the parties. * * * And this condition, based, as it is, on the construction of this language, informed the holder of the policy that, if he (the insured) purposely destroyed his own life, the company would be relieved from lia-bility."

One of the provisions of the policies in suit is that suicide, after two years from date of policy, would not be a valid ground for con-test; and, when the insured affixed his signature to the several applications for the policies in suit herein, he could not have mis-understood that the statements therein, "I also warrant and agree that I will not die by my own hand, whether sane or insane, during the said period of two years," were introduced for the purpose of ex-cepting from the operation of the policy any intended self-destruc-tion within such two years. He was thereby informed, and each holder of said policies (containing thereon the application with this

warranty in full), was informed, that, "if the insured purposely destroyed his own life within said two years, the company would be relieved from liability" under said policies. Such is "the distinct agreement of the parties." "The right to make contracts carries with it the right to determine what is prudent and wise, what is unwise and imprudent; and upon that point the judgment of the individual is subject to that of no other tribunal." Jeffries v. Insurance Co., 22 Wall. 47, 54. In the state of Missouri, and perhaps under some other jurisdictions, the statutes of the state have placed the suicide clauses of insurance contracts under provisions of local law, but no such legislation has been attempted in Iowa. This clause must therefore be construed in this case in accordance with the announced general principles of construction.

3. Another point in the demurrer is that "the said warranty, in so far as it attempts to control the acts of the insured while insane, imposes an impossible condition upon the contract, which was at the time of its execution known to be impossible; and the same is void, and constitutes no defense to the claim of plaintiff." It must be remembered that this action is not brought to enforce a contract based on the warranty referred to. The warranty or agreement is pleaded in defense. Construing this warranty according to the rules of construction herein above stated, and what Circuit Judge Caldwell, speaking for the circuit, announces (Kahnweiler v. Insurance Co., 14 C. C. A. 489, 67 Fed. 483, 487) as "a well-settled rule for the interpretation of contracts,"—that "the court will lean to that interpretation of a contract which will make it reasonable and just."—can any doubt exist as to what the applicant for insurance and the company to whom the application was made understood and intended to express by this warranty? Is any interpretation thereof practicable, under the situation of the parties at the time, and the context of this clause, other than that the applicant intended to tender to the company, and the company understood the applicant as tendering, an application for insurance, one condition of whose contract was to be that if the applicant did, within two years from issuance of policy, commit self-destruction, whether at the time of such act he was sane or insane, the policy should not be binding on the company? And can any doubt exist that the company, in issuing the policy, and the insured and the plaintiff, when the policies were received and accepted by them, intended and understood the policies as containing, in this warranty, an exception to the risk otherwise assumed by the policies? To my mind these warranties and agreements, under the situation, become and are of force and effect as a promissory warranty or executory stipulation, exempting from liability on the policies upon substantial breach thereof.

It follows, therefore, that the demurrer of plaintiff to defendant's answer must be overruled, to which plaintiff excepts. The clerk will enter due order accordingly, and notify counsel of such action.