Grant McLean v. American Mutual Fire Insurance Company of Des Moines, Iowa, Appellants.

Insurance: REDUCTION OF RISK. An insurance company cannot
1 reduce the amount of a policy without the assent of the assured.

Settlement of Loss. Where the assured, pending a dispute as to
2 the amount of the policy in force at the time of the loss, executes proof of loss in which a stated sum is claimed with the agreement to accept the same and discharge the insurer from further liability, which sum is paid and retained by the assured for more than a month, he is bound by the settlement, in the absence of fraud.

Waiver. An agreement between the insurer and assured before ad-
3 justment that an investigation of the loss should be made but that the same should not operate as a waiver of the rights of either party, did not affect the validity of the settlement sub-sequently made.

*Appeal from Dallas District Court.*—Hon. A. W. Wilkinson, Judge.

Saturday, January 23, 1904.

On the 23d day of August, 1899, the defendant issued plaintiff's policy, covering his stock of goods against fire and tornado during the four years following. Much of the stock was destroyed by fire July 4, 1901. Due notice was given, and on the 12th day of the same month the adjusters of this and four other companies met the plaintiff at Dallas Center. As the policies covered specified property in different buildings, and as plaintiff's books contained no data as to location of the property destroyed, some difficulty was experienced in determining the extent of the loss for which each of the companies was liable. After much inquiry and computation, an agreement was reached by which plaintiff was to be paid fifty per cent. of the face of the policies. This appeared to

be $11,050, but the defendant claimed to have canceled $750 of the $1,250 indemnity stipulated in its policy by a letter written to plaintiff the day before the fire. The evidence tended to show that plaintiff objected to this claim, and insisted that he had never received such a letter. Nevertheless, he accepted payment from the other companies, and signed and swore to proof of loss to defendant, stating the amount of policy in force to be $500, and that "the amount claimed of the American Mutual Fire Ins. Co. is $250, which the assured agrees to accept, and, when paid, said company shall be forever discharged from all liability of whatsoever nature for and on account of said loss." The company immediately sent a draft for this amount to defendant, which he returned October 17, 1901. In this suit recovery is demanded for the entire amount of the indemnity stipulated in the policy. The verdict was for fifty per cent. of the face of the policy, with interest added, and from judgment thereon defendant appeals.—*Reversed.*

*Thos. A. Cheshire* for appellant.

*White & Clarke* for appellee.

Ladd, J.—No doubt the company could have canceled its entire policy by returning the proper proportion of the premium received. But neither the policy nor the law authorized it to reduce the amount of the policy without assent of the assured. The mere writing of the letter saying, "We are then obliged to reduce our line upon your risk from $1,250 to $500." and inclosing a slip to this effect, with the request that it be attached to the policy, did not effect the object sought, unless after its receipt something was done or omitted by the insured indicating acquiescence therein. There is nothing in the record to contradict his testimony that he never received the letter. Indeed, there is no competent evidence that it was ever mailed.

1. Reduction of risk.

It is manifest, then, that the contention of defendant, when the alleged settlement of plaintiff's loss of his stock of goods with the adjusters at Dallas Center was arranged, that $750 of its policy had been canceled, was without merit.  But the claim may have been made in good faith, and there is no averment in the pleadings that it was not.  After much discussion and computation, the adjusters agreed to settle the loss by the payment of fifty per centum of the face amount of the policy in force. This was accepted as to all the companies, with the possible exception of defendant.  In the course of the discussion plaintiff was informed for the first time of the alleged reduction of its policy, and objected on the ground that he had not received notice; but in the same evening he made out the proofs of loss, wherein he asserted that "the amount claimed * * * is $250, which the assured hereby agrees to accept, and, when paid, said company shall be forever discharged from all liability of whatsoever nature or kind for and on account of said loss."  A draft for the amount was promptly sent, which he returned after having retained it more than a month.

2. SETTLEMENT of loss.

While the plaintiff insists that he was dissatisfied, and so declared to the company's representatives, he nowhere denies entering into such an agreement.  He was asked: "Now, you may state to the jury why it was that you signed and verified that agreement if you did not intend to abide by the settlement," and answered: "Why, I wanted to get what I could, and commence action for the balance; that is the size of it.  Q.  You say you wanted to get what you could, and commence action for the balance?  A.  Yes; I thought I was imposed on.  I didn't think they ever gave me any notice of cancellation.  Q.  Did you make any objection to signing that agreement?  A.  I signed it for the amount of two hundred and fifty dollars.  Q.  Did you say to Mr. Seager that you would not stand by that?  A.  I would stand by that as far as the two hundred and fifty dollars is concerned; I didn't make a settlement in full.  Q.  You didn't?  Now,

at the time you signed that agreement, you supposed that was right, didn't you? A. That was all right. Q. So you signed it, and concluded that you would get what you could and sue for the balance? A. Yes, sir. Q. Did you tell Mr. Seager you would do that? A. I don't think I told him I would sue. I told him I was not satisfied. I told him that a couple of times. Q. Didn't you tell Mr. Seager you were satisfied the adjustment was the best you could do there at that time? A. I thought it was at that time. Q. That you were satisfied with it? A. No; I never told him I was satisfied with it."

What he intended to do in the way of bringing suit subsequently is not material. A party cannot save himself from the binding effect of a compromise by an undisclosed mental reservation that he will get all he can, and sue for the balance. If not satisfied with the amount obtained, he was in the situation of many creditors who compromise their claims. He agreed upon a settlement, the terms of which were embodied in the proof of loss, and the defendant fully complied therewith in its prompt remittance of the amount he agreed to accept. This was the construction given to the evidence by the district court, for the jury was advised in the ninth paragraph of the charge that the paper nominated proof of loss 'is *prima facie* evidence that plaintiff settled with defendant, and agreed to accept from it the sum of $250 in full settlement of all his claim for loss against the defendant under the policy in suit." That this appeared in proof of loss renders it none the less binding. It may be that the insured is not always bound by the statement therein of the amount claimed, as where there has been a mistake, as in *Crittenden v. Ins. Co.,* 85 Iowa, 653, or where the company has refused to pay, as in *Corkery v. Ins. Co.,* 99 Iowa, 382. But in the absence of deceit and fraud, when a distinct proposition has been incorporated in the proofs, and accepted and acted upon by the company, further controversy is foreclosed.

But the court seemed to have been of the opinion that this was obviated in some way by the so-called "nonwaiver"

agreement entered into preliminary to the investigation. It
was signed by plaintiff and all the adjusters,
and reads: "It is hereby mutually understood

3. WAIVER.

and agreed by and between Grant McLean of the first part
and the Fidelity Insurance Co., of Des Moines, Iowa; An-
chor Insurance Co.; State Insurance Co.; American Insur-
ance Co.; Capital Insurance Co., and other companies sign-
ing this agreement, parties of the second part, that any action
taken by said parties of the second part investigating the
cause of fire or investigating and ascertaining the amount
of loss and damage to the property of the party of the first
part caused by fire alleged to have occurred on July 4th,
1901, shall not waive or invalidate any of the conditions of
the policy of the parties of the second part held by the parties
of the first part and shall not waive or invalidate any rights
whatever of either of the parties to this agreement. The in-
tent of this agreement is to preserve the rights of all parties
hereto and provide for an investigation of the fire and the
determination of the amount of loss or damage in order that
the party of the first part may not be delayed unnecessarily in
his business and in order that the amount of his claim may
be ascertained and determined without regard to the liability
of the parties of the second part." Its entire purpose was
to enable the parties thereto to investigate the cause of the
fire and extent of the damages to the property insured with-
out affecting their rights or liabilities under the several poli-
cies.   It does not undertake to limit the binding force of
any contracts they may enter into. Its sole reference is to
facts which might be the basis of an adjustment, but does not
purport to obviate the effect of any adjustment, compromise,
or settlement the parties in their discretion may see fit to
make.   The record conclusively establishes an agreement to
settle which was complied with, and, unless procured by de-
ceit, it must stand.—Reversed.