ANDY WILLIAMS, Appellee, v. FARMERS MUTUAL HAIL INSURANCE ASSOCIATION OF IOWA, Appellant.

**INSURANCE: Adjustment of Loss—Offer and Acceptance—Effect.** An
1  agreement of settlement of a loss under a policy of insurance,
consummated through an offer by the insured in his proofs of
loss, and by an acceptance of the offer by the insurer, and relied
and acted on by the latter, is conclusive on the parties, in the
absence of fraud or mistake.

**CONTRACTS: Validity—Failure to Read—Effect.** A party may not
2  avoid the binding effect of a contract by the plea that he did not
know what he was signing, when he could read, and was not prevented from reading.

Headnote 1:  29 C. J. p. 208 (Anno.).   Headnote 2:  13 C. J. p. 370.

Headnote 2:  6 R. C. L. 624.

*Appeal from Webster District Court.*—B. R. BRYSON, Judge.

NOVEMBER 22, 1927.

Action to obtain compensation for damage to crops, covered
by two hail insurance policies. The jury returned a verdict for
plaintiff, and defendant appeals.—*Reversed.*

*Clark, Byers & Brunk,* for appellant.

*Hanson & Schaupp,* for appellee.

KINDIG, J.—In this case we are not favored with a brief and
argument on behalf of the plaintiff-appellee, but, after reading
the entire record with painstaking care, it appears to us inevitable that a reversal must result because the district court ignored the contract of settlement between the insurance company and the assured.
There were involved two hail liability poli-

1. INSURANCE: adjustment of loss: offer and acceptance: effect.

cies for $1,000 each, issued June 8, 1922, one numbered 176109, and the other 190360. While these agreements were in effect, a hailstorm passed over appellee's land, July 1, 1924. Consequently, the following proof of loss was executed and submitted to the appellant, under the insurance agreement numbered 176109:

"Proof of Loss

"Farmers Mutual Hail Insurance Association of Iowa.

I, Andy Williams, holding policy No. 176109 for $1,000.00 being duly sworn hereby make claim for damages and loss to my growing crops from storm of 1 day of July, 1924.

On 30 acres of wheat—damaged 5 per cent.

On 20 acres of oats—damaged 15 per cent.

On 50 acres of oats—damaged 5 per cent.

On 20 acres of oats—damaged 3 per cent.

Total number of acres of crop grown by me—230.

Total amount of insurance—$1,000.00.

Amount of insurance on each acre—$4.35.

Average per cent as shown above—5-15-3.

Number of Acres of crop damaged—120.

Total amount of damage—$35.01.

I agree to accept thirty-five and no—100 dollars in full payment of above claim.

Dated at Moorland this 22 day of July, 1924.

Andy Williams,<br>Assured."

An identical claim and offer was presented under Policy No. 190360. Both were immediately accepted by the insurer, and, in accordance with undisputed "policy" assessment stipulations, an indebtedness of appellee's was deducted from the amount agreed upon, and the aggregate consolidated balance was transmitted to Williams by draft.

After receiving legal advice, this was refused, due to alleged inadequacy of the sum agreed upon,—not a shortage thereof under the "contract of settlement;" and on August 7, 1925, suit was commenced on these separate indemnity documents, to recover the total sum of $1,163.12 and interest. By way of answer, the "settlement" above indicated was pleaded as an

absolute defense. To avoid this effect, appellee, by reply, stated that he did not read said "proofs of loss," and that he was induced by fraud of the adjuster to sign the same. Upon this theory, the case was tried to a jury, resulting in a verdict against appellant in the sum of $478.50. Deceit and false pretenses asserted were that the said appraising agent led appellee to believe that the corn was not included in this transaction, but disposition of that demand would be made in the future. Proof offered failed to support this contention. Through motion to strike, all evidence relating thereto was removed. There was no allegation that the accord and satisfaction was to be avoided by mistake, and testimony in that regard is lacking in the record. A directed verdict was asked at the close of appellee's case, on the basis of said compromise, and again renewed after both parties had rested, but the district court denied them, respectively.

Finally, in an application for a new trial, the same thought was expressed. This later relief was also disallowed. These rulings, we are constrained to say, constituted error. Contractual relationship resulted from said offer and acceptance. Consideration was furnished by the concessions made in arriving at the amounts named in the "proofs of loss." Thus a bar to the present quarrel arises. *McLean v. American Mut. F. Ins. Co.*, 122 Iowa 355; *Gerlach v. Grain Shippers Mut. F. Ins. Assn.*, 156 Iowa 333. Language used in *McLean v. American Mut. F. Ins. Co.*, supra, is:

"It may be said that the insured is not always bound by the statement therein [proof of loss] of the amount claimed, as where there has been a mistake, as in *Crittenden v. Ins. Co.*, 85 Iowa 653, or where the company has refused to pay, as in *Corkery v. Ins. Co.*, 99 Iowa 382. But in the absence of deceit and fraud, when a distinct proposition has been incorporated in the proofs, and accepted and acted upon by the company, further controversy is foreclosed."

Appellee said:

"I heard him [the adjuster] say he was putting down 30 acres of wheat damaged 5 per cent, 20 acres of oats damaged 15 per cent, 50 acres of oats damaged 5 per cent, and 20 acres of oats damaged 3 per cent * * *. I knew, when he asked me to sign these papers, why I was signing them; I did not know what

I was getting. I knew they were proofs of loss, to go in to the company.''

Left, then, is only a matter of computation. Mr. Williams could read. No one prevented his doing so in this instance. If he neglected this important precaution, the blame belongs to

**2. CONTRACTS: validity: failure to read: effect.**
him. Ignorance of the written substance, caused by such carelessness, supplies no excuse. *Garner v. Johns,* 182 Iowa 684; *Midland Mtg. Co. v. Rice,* 197 Iowa 711. We approved the following declaration in *Midland Mtg. Co. v. Rice,* supra:

'' '* * * for the rule obtains in this state that, if a party can read, or if, by the exercise of reasonable diligence, he might have ascertained the defect in an instrument complained of, he is bound thereby, being conclusively presumed to know its contents.' If, however, the party signing is prevented, by some artifice, deception, or fraud on the part of the opposite party, from reading or ascertaining the contents and effect of the writing, the rule above stated does not apply.''

Here, there is no justification for the omission. Condonation cannot be extended. Express representation was made by appellee in the ''proof of loss'' that the total number of acres devoted to crops was 230, and that the part thereof damaged was 120. Deducting the latter from the former leaves the remainder of 110 acres, which is the exact amount planted to corn. Necessarily, by well established rules of interpretation, impliedly, if not expressly, appellee thereby told appellant that the ''settlement'' included ''corn.'' At the outset, ''claim'' was made to appellee's ''growing crops.'' Succeeding that was set forth the total possible area thereof. Reduction was then made to the itemized portion actually injured. Manifestly, the ''corn-'' field was included at the beginning within the title ''Total number of acres of crop grown,'' but was excluded later, under the heading ''Number of acres of crop damaged.'' Hence, beyond a peradventure of a doubt, the parties understood there was no detriment to the ''corn.'' Ambiguity does not exist, but rather, explicitness is very apparent. Therefore, appellee was bound.

The judgment of the district court is reversed, and a new trial granted.—*Reversed.*

EVANS, C. J., and STEVENS, FAVILLE, and WAGNER, JJ., concur.