LEE LEGLER, Appellant, v. WEST SIDE MUTUAL FIRE INSURANCE ASSOCIATION OF LINN COUNTY, Appellee.

No. 41342.

JUNE 24, 1932.

George F. Buresh, for appellant.

G. K. Thompson, for appellee.

ALBERT, J.—In the year 1930 the plaintiff was engaged in the dairy business on a farm owned by M. J. Donnelly located near Marion, Iowa. The buildings on said farm consisted of

938

two silos, large barn with stable for sixty cows, and in connection a milk house, office, boiler room, ice machine and ice box room, another barn, hen house, granary and dwelling. Plaintiff had an insurance policy with defendant company in the amount of $6400, covering all of his personal property in these various buildings. About the middle of September, 1930, a fire occurred which destroyed the first-mentioned barn, the milk house, the combined corncrib and granary, the hen house, and all of plaintiff's personal property in said buildings. The Company was notified of the loss and the president, secretary and adjuster of said Company appeared at the scene of the fire and, after looking over the same, made out a proof of loss of the property destroyed, and plaintiff signed and swore to the following writing: "I agree to accept $1117 and 10/100 in full satisfaction for said claim under your policy No. 13180 and leave . . . . . . dollars in full under said policy." This proof of loss was dated September 17, 1930.

Later, on September 27, 1930, another proof of loss was made out, covering certain property not covered in the first proof of loss, and attached to the same was a written statement identical with the statement attached to the first proof of loss, except that the amount specified in the latter was $150. This was also sworn to before a notary public.

To avoid the force and effect of these writings, the plaintiff insists that it was understood and agreed between these parties that said sum did not represent a full settlement; that he had not had an opportunity to make a complete inventory of his loss, and it was agreed that the balance of such loss would be adjusted as soon as he had an opportunity to make a full and complete itemized statement of the articles lost in said fire; that the defendant practiced fraud and deceit on the plaintiff by securing his signature to the papers containing statements that the same was in full satisfaction of his claim, and the same was contrary to the understanding and agreement had between these parties at the time of the execution of said purported statement; and further alleged that the values set out in the proofs of loss do not represent the actual values of said property destroyed, and were so placed in said proof of loss by mistake, and the actual values were much larger, as appears by plaintiff's petition.

He makes the same allegation as to values set out in the second proof of loss.

We turn to the record, therefore, to see what showing was made by the plaintiff to avoid the force and effect of these writings signed by him. It is to be noted that in the plaintiff's pleading the only allegation touching the question of fraud and deceit is a general statement that the defendant practiced fraud and deceit on the plaintiff by securing his signature to the papers containing statements that the same was "in full satisfaction of his claim," and the same was contrary to the understanding and agreement between these parties at the time of the execution of said property statement. This is wholly a conclusion of the pleader, and not a statement of any fact which could be the basis of a charge of fraud, deceit or false representation in the procurement of his signature to said writings.

Passing this, however, the evidence shows that the officers of the Company made out the first proof of loss and the plaintiff signed the same without reading. He testifies that one of the officers held the writing and he was told to sign the same and he did so without reading or inquiring as to its contents; that they then went to town and such officer went to the bank and handed the paper to a notary and told the notary that the plaintiff wanted to swear to the same, and he did so, and the notary put his certificate thereon. The plaintiff made no effort whatever to read the same or to have it read to him, and the only excuse he offers is that he "did not have his glasses with him." He admitted he could read and write and had considerable business experience, among other things had conducted this dairy farm for a number of years, and apparently was a man of ordinary business capacity. He says that he did not have his glasses with him, but this in itself is not sufficient.

As to the signing of the second proof of loss, the evidence shows that plaintiff called upon the officers of the defendant company and said that certain matters had been omitted from the first proof of loss and asked for more money. The officers met him a few days afterwards and evidently conceded that some articles had been burned which were not listed in the first proof of loss and the second proof was accordingly made. It appears that this second proof of loss was made and was taken into a place of business in Marion, was laid down, and the plain-

tiff was requested to and did sign it and swore to the same before a notary public. He received and cashed the checks represented by both of these proofs of loss, but when he indorsed the second check he wrote on the same that it was ''accepted as part payment of insurance claim.'' Signed, ''Lee Legler.''

One other item of testimony is claimed by the plaintiff to have a bearing on this proposition, and that is that on two or more occasions he requested the Company to furnish him a copy of the policy or application and they failed so to do.

In a general way, this is the substance of his testimony. It does not measure up to the standard of proof required from him, under these circumstances, to warrant a court or jury in holding that fraud or deceit had been practiced upon him in procuring his signature to these two proofs of loss. The duty of one signing an instrument to read the same before such signing has been the subject of a long line of decisions in this court. We settled the rule quite definitely that if the opposite party does not do something in an affirmative way to prevent the party signing from reading the same, then he signs at his peril and is bound by the same. See McLean v. American Mutual Fire Ins. Co., 122 Iowa 355; Midland Mortgage Co. v. Rice, 197 Iowa 711; Charlson v. Farmers State Bank, 201 Iowa 120; Williams v. Farmers Mutual Hail Ins. Assn., 204 Iowa 991; Raible v. Bernstein, 209 Iowa 1083, and cases there cited.

Both of the writings signed by the plaintiff stated in terms that the amount received ''is in full satisfaction of the loss·occurring under this policy.'' Plaintiff having failed to produce sufficient proof to avoid the specific provisions of the writings, it necessarily follows that he is bound by the terms of such writings, and his claim against the defendant for this fire loss is fully satisfied and acquitted. He shows no cause of action against the defendant, and the court rightfully directed a verdict against him.—Affirmed.

WAGNER, C. J., and STEVENS, FAVILLE, and DE GRAFF, JJ., concur.