## A. W. SEWELL CO. v. COMMERCIAL CASUALTY INS. CO.

No. 5265.  Decided October 20, 1932.  (15 P. (2d) 327.)

*Clark, Richards, & Bowen,* of Salt Lake City, for appellant.

*Hamilton Gardner,* of Salt Lake City, for respondent.

BATES, District Judge.

Plaintiffs appealed to this court from an order of the district court granting a motion of the defendant for a directed verdict and from an order denying plaintiff's motion for a new trial.

It is alleged by the plaintiff and admitted by defendant that defendant on the 4th of June, 1929, made and delivered to plaintiff an insurance policy whereby defendant agreed to indemnify plaintiff for loss of money and securities occasioned by robbery during the term of said policy outside of the premises at which plaintiff was carrying on its mercantile business between the hours of 7 a. m. and 10 p. m. A copy of the insurance policy is attached to the complaint and contains a number of conditions which will be hereafter referred to.

Plaintiff alleges that on the 15th of March, 1930, its manager, John F. Roach, at about 9:30 p. m. outside of the plaintiff's store, was assaulted and robbed of cash, receipts, credits, and securities valued at $1,685.21. Defendant denies the robbery and alleges that if the robbery occurred, it

took place at or later than 10:20 p. m. Paragraph 7 of plaintiff's complaint reads as follows: "That plaintiff within sixty days from the date of the discovery of said loss, furnished said defendant with proof thereof, and otherwise performed all the conditions required of it to be performed by said policy." Defendant answering said allegations uses the following language: "Denies each and every allegation contained in paragraph 7 of said complaint." Other allegations and denials are immaterial for the purpose of this appeal.

The contract agreement of insurance upon which the action is based is as follows:

"The Commercial Casualty Insurance Company does hereby agree with the insured to indemnify the insured for all loss of or damage to money and securities including the wallet, book, satchel, safe or chest in which such property is contained, occasioned by robbery or attempt thereat, committed during the hours beginning 7 o'clock a. m. and ending 10 o'clock p. m., within the policy period from a custodian outside of the assured premises but within the United States of America or the Dominion of Canada."

The policy also bears the following statement: "This agreement is subject to the following conditions:" Under the foregoing statement there are fourteen conditions, some of them being in turn divided into subdivisions or subconditions; among these conditions are found the following exclusions upon which the defendant and respondent relies:

"(2) The company shall not be liable for loss. * * *

"(5) Of any security unless the assured shall after their loss use due diligence in endeavoring to prevent their negotiations or payment. * * *

"(9) Unless books and accounts are kept by the assured and the Company can accurately determine the loss therefrom."

"(5) Proof of loss, 'Affirmative proof of loss,' under oath on forms provided by the company, must be furnished to the company at its home office in Newark, N. J., within sixty days from the date of the discovery of such loss. This entire policy shall be void in the event that the assured defrauds or attempts to defraud the company in the procuring of the insurance or in the adjustment of any claim hereunder. The assured upon request of the company shall render every

assistance in his power to facilitate the investigation and adjustment of any claim, exhibiting for that purpose any and all books, papers, and vouchers bearing in any way upon the claim made and submit himself and associates in interest, and also so far as he is able, his employes, to examination and interrogation by any representative of the company under oath if required."

At the conclusion of the evidence the defendant moved for and the court granted a directed verdict upon the following grounds:

"A. That no competent evidence had been presented and admitted by this court in this case from which a reasonable jury could possibly render its verdict in favor of the plaintiff.

"B. * * * From which a reasonable jury could possibly find that the plaintiff has complied with and/or performed and/or discharged the conditions expressly set forth in the contract of insurance involved in this case, and introduced herein as 'Plaintiff's Exhibit A'; which are conditions precedent to any liability on the part of the defendant insurance company to the plaintiff assured, and which are conditions precedent to any recovery by the plaintiff assured against the defendant insurance company."

"C. * * * From which a reasonable jury could possibly find that the hold-up involved in this case occurred before 10 o'clock p.m. on March 15, 1930, at Salt Lake City, Utah.

"D. * * * From which a reasonable jury could possibly find that the plaintiff assured has kept books and accounts from which the defendant Insurance Company could or can accurately determine or in any manner whatsoever determine therefrom the loss of which the plaintiff complains in this case.

"E. * * * From which a reasonable jury could possibly find that the plaintiff assured, after the alleged loss of the checks and other securities involved in this case, used due diligence in endeavoring to prevent their negotiation or payment."

There is no question under the evidence but that plaintiff's manager, Mr. Roach, was assaulted and robbed on the evening of the 15th of March, 1930, as claimed by plaintiff and that cash and valuable securities were taken from him. The serious question upon this point is as to whether there is any evidence from which a

jury might be justified in concluding that the robbery occurred before 10 o'clock.

After examining the record, we have come to the conclusion that there is evidence to justify such a finding. One witness testified as follows: "I worked for the Sewell Company. I worked for them on March 15, 1930 at the store where Mr. Roach was. They closed the store at 8 o'clock. After closing we took the vegetables off the fruit stand to put them in the back, brushed the leaves and that off the fruit stand, put clean paper down, swept the floor, putting out what stock we had. It took us about an hour and a half to do that work. After we finished the work we took off our aprons, put on our street clothes and went home. It took us about ten minutes to make such changes. Jack Roach, Frank Wildhaber, A. C. Worthen, Don Thatcher, myself and a small boy by the name of Niel Halestorm then left the store. It was about twenty minutes to ten when we left the store. We were all in the back room together changing our clothes. There was no discussion among the boys as to what time of day it was, nor was there any comparison of watches. When I left the store I was walking about three feet ahead of Mr. Roach. I did not see the man who pounced upon him. The thing that attracted my attention to the scene was the report of a gun. * * * When I say that it was twenty minutes to ten when I left the store, it is just a reckoning of time. It was not just a guess. I figured I was in the store about an hour and a half after closing."

Several witnesses testified in substance the same as Mr. Anderson. While the evidence may not be convincing to some minds, still it is evidence tending to establish that the robbery happened before 10 o'clock. The rule is well established in this state by a long list of authorities that where there is any substantial evidence upon which the jury could find for the plaintiff under the pleadings, the trial court must submit the issues to the jury and cannot direct a verdict. *Chadwick* v. *Beneficial Life Insurance Company*, 54 Utah 443, 181 P. 448. In determining this

question the evidence must be viewed in the light most favorable to the plaintiff. Justice Frick, speaking for the Court in *Groesbeck* v. *Lake Side Printing Company*, 55 Utah 335, 186 P. 103, 104, uses the following language:

"In that connection it must be kept in mind, however, that in view that the court disposed of the case on defendant's motion the evidence must be considered and applied most favorable to the plaintiff's cause of action."

A. W. Sewell, secretary of the plaintiff company, reported the robbery by telephone Monday morning, the robbery having occurred Saturday night. Abe Guss, a representative of the defendant, made an investigation. Sewell gave him the deposit slips for the day's business at the store and all information possessed by him. Mr. Guss prepared a formal proof of loss from the information given him by Mr. Sewell, which statement Mr. Sewell signed. It contained the following language:

"Between the hours of 10:30 p. m. and 11 p. m. on the 15th day of March, 1930, my custodian, John F. Roach, was robbed in the following manner."

It is plain that Mr. Sewell had no personal knowledge of the transaction. The defendant insists that the plaintiff is bound by its statement in the proof of loss furnished the company as to the time the robbery occurred. In argument respondent's counsel contend that the defendant in reliance upon plaintiff's statement as to the time of the robbery, released the reserve set up by the company when the insurance was issued to meet the contingency of possible future losses under the policy, and that in so doing it acted in reliance upon the plaintiff's statement to its disadvantage, for which reason they claim plaintiff should now be estopped from proving that the robbery occurred at a different time.

There is no evidence in the record tending to show that the defendant in fact placed any money in reserve to meet the contingency of possible future losses under the policy; neither is there any evidence from which the court would

be justified in assuming that after the proof of loss was filed, the company released such reserve amount. In fact, counsel does not claim there is any evidence establishing either of these facts. It seems to be his idea that the court must assume that because the law provides for such actions, the insurance company performed them. He seems to be of opinion that because the practice of releasing such reserve is allowed under the Utah insurance statutes, that we must presume that his company complied with this practice. The setting up a reserve and its release would amount to nothing more than a bookkeeping entry at their own instance and under their own control. These entries they ask us to assume to have been made without proof, because some statutory provisions not pointed out permitted them to so act. We are unable to accept this view; but even if we were to conclude that the defendant complied with-all requirements of law, and also did all such things as the law might permit them to do, still we are unable to see in what way they have acted to their disadvantage. They do not claim to have paid any money out or to have been placed at a disadvantage in any way by the filing of the statement.

The statement in the proof of loss as to the time the robbery occurred was properly admissible in evidence, and in the absence of explanation or contradiction, should be accepted by the court as fixing the time; but it is only a prima facie statement subject to correction or explanation. Notwithstanding the statement, it was the right of the plaintiff to establish by other evidence to be considered by the jury in connection with the statement in the proof of loss, just what time the robbery in fact occurred. The authorities so hold. We do not think it necessary to consider all the cases cited by counsel for respondent in support of his position. It is enough to call attention to some of the language used by the court in the cases cited by the defendant. In *Stephens* v. *Metropolitan Life Insurance Co.*, 190 Mo. App. 673, 176 S. W. 253, 255, the court said:

"Proofs of death, furnished by a beneficiary to an insurer under the policy, are admissible in evidence against such beneficiary as proof * * * of the truth of the statement therein contained, and, when not contradicted or explained, may become conclusive against the right to recover on the policy. * * * It is true that the statements against interest of the beneficiary are prima facie only, and are not to be treated as conclusive in every case where other facts are brought forward to explain them so as to relieve against the baneful effect of such admission."

In *McLean* v. *American Mutual Fire Ins. Co.*, 122 Iowa 355, 98 N. W. 146, another case cited by the defendant, the court said:

"This was the construction given to the evidence by the district court, for the jury was advised in the ninth paragraph of the charge that the paper nominated proof of loss 'is prima facie evidence that plaintiff settled with defendant, and agreed to accept from it the sum of $250 in full settlement of all his claim for loss against the defendant under the policy in suit.' "

Justice Field, in *Mutual Ben. Life Insurance Company* v. *Newton*, 22 Wall, 32, 36, 22 L. Ed. 793, after pointing out that there are many cases which hold that where a mistake has occurred in the preliminary proof presented and no corrective statement is furnished the insurance company before trial, the insured will not be allowed on the trial to show the facts were different from those stated, then follows with the following language:

"It is not necessary, however, to maintain any doctrine as strict as this in the present case; and possibly the rule there laid down is properly applicable only where the insurers have been prejudiced in their defence by relying upon the statements contained in the proofs."

Statements in proof of loss are not conclusive against the insured, unless it also appears that the insurer has in reliance thereon acted to its disadvantage. *Supreme Lodge, K. of P.* v. *Beck*, 181 U. S. 49, 21 S. Ct. 532, 45 L. Ed. 741; *Gass* v. *Commonwealth Casualty Company*, 113 Kan. 570, 214 P. 1115; *White* v. *Royal Insurance Company*, 149 N. Y. 485, 44 N. E. 77; *Prudential Ins. Co.*

of America v. *Hummer,* 36 Colo. 208, 84 P. 61; *Wallin* v. *Massachusetts Bonding & Ins. Co.,* 152 Wash. 272, 277 P. 999; *Harrington* v. *Interstate Business Men's Acc. Ass'n,* 232 Mich. 101, 205 N. W. 116; *Gill* v. *Modern Woodmen of America,* 221 Ill. App. 388; *Ferrero* v. *National Council of Knights,* 309 Ill. 476, 141 N. E. 130; *Rudolph* v. *John Hancock Mutual Life Ins. Co.,* 251 N. Y. 208, 167 N. E. 223; *Ryan* v. *Metropolitan Life Ins. Co.* (Mo. App.) 30 S. W. (2d) 190, 194. In the Ryan Case the court uses the following language, which we think an accurate statement of the law:

"The prime point in the case arises upon the action of the court in directing a verdict for defendant. * * * Upon a careful review of the excellent briefs presented by the respective parties and an examination of the authorities cited, we have reached the conclusion that there was some evidence to rebut the statement of facts contained in the proofs of death, as represented by the physician's certificate, upon which to take the judgment of the jury as to whether the insured was of sound health on the respective dates of the application and the policy, and whether or not his alleged ailments existed on the dates named and contributed to his death, and that plaintiff is not concluded by the statements contained in the proofs. It is quite true that admissions contained in the proofs of death may be used as evidence against plaintiff, and are conclusive, unless controverted or explained. However, it is equally true that such admissions are merely prima facie proof, and that said admissions may be explained as having been erroneously made, or rebutted by evidence to the contrary. When there is any evidence produced which conflicts with the alleged admissions and tending to show a contrary state of facts, a question arises to be determined by the jury on the credibility of witnesses and the weight of the evidence."

It is claimed by the respondent that because plaintiff did not offer proof to establish the conditions printed upon the policy and referred to in the motion for a directed verdict, the court had no alternative other than to grant the motion. We have a statute, Comp. Laws Utah 1917, § 6601, which reads as follows:

"In pleading the performance of conditions precedent in a contract, it is not necessary to state the facts showing such performance, but

it may be stated generally that the party duly performed all the conditions on his part; and if such allegation be controverted, the party pleading must establish, on the trial, the facts showing such performance."

With reference to these conditions plaintiff alleged:

"VII. That plaintiff within sixty days from the date of the discovery of said loss furnished said defendant with proof thereof and otherwise performed all the conditions required of it to be performed by said policy."

The defendant in its answer "denies each and every allegation contained in Paragraph 7 of said complaint." The direct reason for the court granting the motion for directed verdict is found in the construction of section 6601, and in the construction of these pleadings. The trial court took the view that the plaintiff having generally alleged the performance of the conditions set out in the insurance policy, and the defendant having generally denied them, the burden was upon the plaintiff to establish the performance of said conditions before it would be entitled to recover.

The respondent's position upon this question is well stated by it in the following language, taken from respondent's brief:

"Unfortunately for the plaintiff at the trial, it did not follow section 6601, that 'the party pleading must establish on the trial, the facts showing such performance.' The plaintiff went only part way in the task. It chose to offer evidence of compliance with one condition, viz., proof of loss, and offered no evidence of the other co-ordinate and equally requisite condition, viz: keeping books and preventing the negotiating of the stolen securities. All these conditions equally required the plaintiff's compliance and under its own pleadings and under section 6601, all equally required proof to establish such compliance, since all allegations had been controverted."

If the law be as contended for by the respondent upon this question, then it would have been necessary for plaintiff to offer proof upon not less than three different propositions included in the conditions to which the agreement

was subject, none of which were in fact disputed or relied upon by the defendant. The adoption of such a rule of construction would lead to great uncertainty and indefiniteness and unnecessarily incumber the record, increase the burden of litigation, and prolong trials. But such is not the law.

The courts, in construing statutes substantially the same as section 6601, have quite uniformly held that when the plaintiff has alleged generally the performance of conditions precedent, the burden is then placed upon the defendant to point out specifically the breach of any condition upon which it rules, and especially deny performance of the condition so pleaded. Nash on Pleadings, 300, 302, 782. In an Arizona case, *Slovenic National Benefit Society* v. *Dabcevich,* 30 Ariz. 294, 246 P. 765, 768, the court quotes with approval the following language in *Taylor* v. *Modern Woodmen of America,* 42 Wash. 304, 84 P. 867, 869, 7 Ann. Cas. 607; because we think the language applicable to the case now under consideration, we also quote from the Washington and Arizona cases as follows:

" 'If, however, it were construed as amounting to a general denial, we think it would be insufficient to raise an issue as to a breach of a condition precedent under a well-recognized rule upon this particular subject, as held by eminent authorities. That rule is that, when a plaintiff has alleged the performance of conditions precedent, the defendant who desires to rely upon a breach of any such conditions, must specifically point out in his pleading the condition and breach upon which he relies, the general denial being insufficient for that purpose.

" 'Mr. Bliss, in his work on Code Pleading (3d Ed.) § 356a, says upon this subject: "The Codes provide, as we have seen, that in counting upon a contract with conditions precedent, their performance may be stated generally. How then may an intelligent issue be made in respect to such performance? May the defendant say that they have not been performed? May he deny generally the plaintiff's statement and thus put him upon proof of performance as to each condition? Or should he state specifically the breach upon which he relies? Upon principle and analogy the defendant should be required to point out the specific condition and show its breach. He relies upon this breach as an excuse for violating the contract on his part;

the demand for certainty in pleading, the general object of written pleadings, requires that he point it out and this is analogous to the common-law practice just spoken of." In the case of *Kahnweiler* v. *Phenix Ins. Co.*, 67 F. 483, 14 C. C. A. 485, the court said: "By failing to set up the condition precedent and its breach in its answer, the defendant waived that defense. If the rule were otherwise, a degree of uncertainty would be introduced in the practice in this class of cases much greater even than that which obtained under the general issue at common law. It would be a snare and a pitfall, and neither the plaintiff nor the court would have any knowledge of the issue to be tried. No matter how many conditions precedent the contract contained, the plaintiff would be obliged to go to the expense of preparing to prove performance or waiver of every one of them. An objection of this character cannot be held back, as was done in this case, until, at great expense, a trial has been gone through with, and the plaintiffs have closed their case upon the evidence, and then be brought forward for the first time by way of a demurer to the evidence. Such a practice would be intolerable." See, also (citing cases). We therefore think that the question of a breach of the conditions that the insured should have been in sound health at the time of the delivery of the certificate was not within the issues tendered by the answer, and there was no duty resting upon respondent to make proof upon that subject.' "

While there are some cases that hold that where the plaintiff has alleged generally the performance of conditions precedent, and the defendant has denied them generally, the burden is upon the plaintiff to offer proof tending to establish the performance of all such conditions, we think the better rule is that the defendant must controvert specifically such breaches of conditions precedent as he relies on, and that where he has failed to so specifically controvert the performance of such conditions precedent, he will be held to have waived them. Such a rule is conducive to certainty in the framing of the issues and will tend very materially to simplicity in the trial of cases. Counsel for the defendant suggests that because the answer denies the allegations of paragraph 7, such denial constitutes a specific denial. We do not think so. To deny the allegations of paragraph 7 of the complaint does not establish any more certainty than would be established by denying all the allegations of the

complaint. Either denial would be equally inclusive as to the allegations of paragraph 7. Either denial, if accepted as sufficient to form an issue, would place the burden upon the plaintiff of establishing by proof every condition and every subdivision of every condition set out in the conditions of the policy. Neither the denial of all the allegations of the complaint nor the denial of the allegations of paragraph 7 assist in the slightest degree in determining exactly which covenant or condition the defendant may claim to have been breached. The defendant is the only person who has it in his power to single out, in the framing of the issues, the particular condition upon which he relies.

For those reasons we think that the defendant must be held to have waived any breach of the conditions precedent on the part of the plaintiff, and that the plaintiff was not under any obligation to prove performance of the conditions referred to by the defendant in its motion for a directed verdict. But if we were to give the statute a construction in harmony with the theory of the defendant, it does not follow that the motion should have been granted.

With reference to the provision No. 5 of the exclusions, the evidence shows without doubt that only part of the property taken by the robbers was in the nature of securities; most of it was cash. There is nothing in the provision, "The company shall not be liable for loss of any securities, unless the assured shall after their loss use due diligence in endeavoring to prevent their negotiations for payment," that ought to operate to defeat the plaintiff from recovering the cash that was taken.

The exclusion No. 9 relied upon by the defendant provides, "unless books and accounts are kept by the assured, and the company can accurately determine the loss therefrom." The only condition prescribed is that books and accounts be kept whereby the loss can be accurately determined. To satisfy the condition no special kind of books, paper, or figures is required. It appears from the evidence that deposit slips were made out by the employees

showing the transactions of the day, the total balance to go to the bank, the checks, the amount of money received, and the customers' sales slips showing receipts of the sales during the day. All of these were placed in the bag with the money when the employees started for the bank and the robbery occurred.

Mr. Sewell's testimony that he gave all the information he possessed and the deposit slips for the day's business to the company's representative is undisputed. No other inference could reasonably be drawn from the evidence than that such record books and accounts were in fact kept and turned over to the defendant company as would enable them to accurately determine the extent of the loss and the particular nature of the different items of loss. That is the plain purpose of the conditions precedent, and the purpose having been satisfied, we must hold it to be a performance of the conditions.

Because the case must be sent back for retrial, it becomes our duty to determine the question raised relative to the cross-examination of the witness Worthen. Worthen was offered as a witness by the plaintiff. He testified as follows in his examination in chief: "I was employed at the 335 South State Street store by the plaintiff company on March 15th, 1930. I was accompanying Mr. Roach when he left the store. He was carrying a brief case with the day's receipts in it. We walked by the alley where the Piggly-Wiggly Store is now and there two men attacked us. One stood back, one grabbed Mr. Roach and said, 'Let's have it.' Then there was a shot fired. Mr. Roach was hit on the head with a gun or black jack. I don't know who it was nor have I been able to find them or the brief case or the money. After Mr. Roach was slugged he was taken to the 'All Night Hamburger System.' At first he was placed on a stool in the front room, and then taken to the back room where they heated water and bathed his head. I would know the lady who bathed his head if I saw her. The police arrived about 20 to 25 minutes after Mr. Roach was taken

into the Hamburger Stand. When the officers arrived they came in and asked what happened and where it happened, and if anybody had been found. They asked myself and the other boys the details of what happened. We answered their questions. The police officers talked to us about 15 minutes before Roach was removed from the Hamburger place. We took the officers and showed them the alley where it happened. Mr. Roach was in the Hamburger place during all this time. Mr. Roach was carried to an automobile after we had shown the police officers where the thing occurred. Later that night I saw Roach at the emergency hospital. The store was closed that night at 8 o'clock. After closing the floor was oiled and swept and the few remaining vegetables taken to the back room. There were five of us participating in this work. It took us about an hour and a half. After the work was finished, I went into the back room to change clothes and there was no comparing of watches." On cross-examination, counsel for the defendant asked Mr. Worthen, "What time was it when you left the store?" and Mr. Worthen answered "9:30 or about that time." Thereupon counsel for the defendant presented Mr. Worthen Defendant's Exhibit 1, which the record shows was a statement in writing signed by Mr. Worthen shortly after the robbery and in the possession of the defendant. Referring to Exhibit 1, counsel for the defendant propounded the following questions: "On this statement marked 'Defendant's Exhibit 1,' which states on the top of the front page, does it not above where your signature A. C. Worthen appears, these words: 'On Saturday, March 15th, at about 10:20 p. m. I, in company with Mr. Roach, Wildhaber, Anderson, and Thatcher, left the Sewell Grocery store at 335 South State Street.' Is that not correct?" Proper objections were made by counsel for plaintiff to the questions which were overruled. Whereupon the witness answered, "Yes." Thereafter the defendant was permitted over the objection of plaintiff to offer the prior written statement in evidence. It was clearly the purpose of counsel for the defendant to

impeach the witness Worthen upon the question of time when the robbery was committed. It will be observed that no question was asked the witness by counsel for the plaintiff as to the time when he left the store. Because of this plaintiff insists that when the defendant inquired of the witness as to the time he left the store that he, for that purpose, made the witness his own and should not have been permitted to impeach him. The rule has no application to the facts in this case. The witness did testify that the store closed at 8 p. m. and that it took about an hour and a half to do the remaining work of sweeping the floor, restocking the store, and taking the remaining vegetables to the back room. His evidence is very suggestive as to the time when they left the store. In fact, it is the same nature as the evidence upon which plaintiff relies to establish the time of the robbery. We are therefore unable to see that the trial court abused its discretion in permitting the defendant to cross-examine the witness upon the question of time of leaving the store. As a part of the cross-examination it was proper to impeach the witness with reference to his testimony bearing upon the time the robbery was committed.

It is therefore ordered that the judgment be reversed and the cause remanded to the district court for retrial. Costs to appellant.

STRAUP, ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., did not participate herein.